ORIGINAL

FILED
NOV 1 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

CWC Partnership I, by and through Richard E. Sands, Tax Matters Partner,

Plaintiff,

v.

United States of America,

Defendant.

Case No. 07-764 T

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER CODE SECTION 6226**

CWC Partnership I ("CWC"), by and through Richard E. Sands, Tax Matters Partner for CWC, files this Complaint pursuant to 26 U.S.C. § 6226 and Appendix F of the Rules of the United States Court of Federal Claims, petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service (the "Service") in a Notice of Final Partnership Administrative Adjustment (an "FPAA") issued to CWC with respect to CWC's Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2002 (the "CWC 2002 FPAA").[1] The CWC 2002 FPAA is attached as Exhibit A. Plaintiff alleges as follows:

## I. THE PARTIES

1. CWC is a general partnership organized under the laws of the State of New York. It has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 16-1472626.

[1] The IRS also issued an FPAA to CWC for its Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2001 ("the CWC 2001 FPAA"), which is the subject of *CWC Partnership I v. United States*, Case No. 06-411 T. That case has been consolidated into *Alpha I, L.P. v. United States*, Case No. 06-407 T, for pre-trial purposes. A Notice of Directly-Related and Indirectly-Related Cases filed concurrently with this Complaint describes the relationship between this case and the other cases consolidated into the *Alpha* case. In the Notice, Plaintiff requests that this case be assigned to Judge Emily Hewitt, before whom the *Alpha* case is pending.

2. As of December 31, 2002, the Trust FBO Abigail Stern U/A Fifth G (the "Abigail Trust") and the Zachary Trust each held a 49.5% Class 2 partnership interest in CWC. As of December 31, 2002, the Trust FBO Andrew Stern U/A Fifth D held 98.06292% and the Trust FBO Andrew Stern U/A Fifth C held .93708% of the Class 1 partnership interest of CWC. As of December 31, 2002, Richard Sands and Robert Sands each held .5% Class 1 and .5% Class 2 partnership interests.

3. The general and Tax Matters Partner of CWC was at all times Richard Sands. Richard Sands has a principal business address at 370 Woodcliff Drive, Fairport, New York and his taxpayer identifying number is XXX-XX-3858.[2]

4. R, R, M & C Group, L.P. ("Group") was a limited partnership organized under the laws of the State of Missouri. It had a principal place of business at 300 Willowbrook Office Park, Fairport, New York, and its partnership identifying number was 43-1936516.

5. The general and Tax Matters Partner in Group was at all times R, R, M & C Management Corporation. R, R, M & C Management Corporation has a principal place of business at 370 Woodcliff Drive, Fairport, New York, and its partnership identifying number is 43-1936515.

6. Until September 21, 2001, the four limited partners in Group were Robert Sands, Richard Sands, Marilyn Sands, and Plaintiff CWC (these four limited partners are hereinafter referred to as the "Initial Limited Partners").

7. On September 21, 2001, the Initial Limited Partners each transferred their partnership interests in Group to four charitable remainder trusts ("CRUTs"): Robert Sands transferred his interest to the Robert Sands Charitable Remainder Unitrust – 2001 ("Robert

[2] Only the last four digits of the social security number are provided pursuant to General Order No. 42A.

Sands CRUT"); Richard Sands transferred his interest to the Richard Sands Charitable Remainder Unitrust – 2001 ("Richard Sands CRUT"); Marilyn Sands transferred her interest to the Marilyn Sands Charitable Remainder Unitrust – 2001 ("Marilyn Sands CRUT"); and Plaintiff CWC transferred its interest to the CWC Partnership I Charitable Remainder Unitrust – 2001 ("CWC CRUT"). (Hereinafter, the four CRUTs will be collectively referred to as the "CRUT Limited Partners.")

8. As of January 1, 2002, the limited partners of Group were the CRUT Limited Partners.

9. On February 27, 2002, the Initial Limited Partners of Group purchased the remainder interests in their respective CRUTs from the charitable remainder beneficiary, The Educational Health and Support Fund. Upon such purchase, both the lifetime and remainder interests in the CRUT Limited Partners were held by the Initial Limited Partners, terminating the CRUTs and making the Initial Limited Partners the partners of Group.

10. R, R, M & C Partners, LLC ("Partners") was a limited liability company organized under the laws of the State of Missouri. It had a principal place of business at 300 Willowbrook Office Park, Fairport, New York, and its partnership identifying number was 43-1936519.

11. The defendant is the United States of America.

## II. JURISDICTION and RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS Appendix F Rules 1 and 2

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(a).

13. CWC timely filed its Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 2002 with the Internal Revenue Service at Ogden, Utah.

14. The CWC 2002 FPAA was issued on August 6, 2007 and was issued by the IRS Office in St. Louis, Missouri.

15. The CWC 2002 FPAA was issued with respect to CWC's taxable year ended December 31, 2002.

16. Richard Sands is the "tax matters partner" for CWC within the meaning of Code[3] Section 6231(a)(7).

17. None of CWC's partnership items with respect to Richard Sands have become non-partnership items by reason of any event described in Code Section 6231(b).

18. The CWC 2002 FPAA purports to make certain adjustments that are duplicative of those made in the CWC 2001 FPAA.

19. In the CWC 2001 FPAA, the Service seeks to make CWC's partners taxable in 2001 on purported gains that were reported as losses by the CWC CRUT in 2001.

20. In the CWC 2002 FPAA, the Service seeks to tax CWC's partners on those same purported gains again in 2002 when the proceeds were distributed to the partners after the termination of the CWC CRUT.

21. The Service may not tax the same taxpayer twice on the same amount, therefore, as a matter of law, the Service's adjustments in either the 2001 CWC FPAA or the 2002 CWC FPAA must be improper.

22. Pursuant to Code Section 6226(e)(1), prior to the filing of this Complaint, Richard Sands deposited with the Internal Revenue Service the total amount of $3,369,096.00, representing the amount by which his tax liability would be increased if the "partnership items" on the Group return for 2001, the Partners return for 2001, the CWC return for 2001, the Beta

[3] References to the "Code" are references to the Internal Revenue Code of 1986 as amended, and references to "Code Sections" are to Sections of the Code.

Partners, LLC return for 2001, and the Alpha I, L.P. returns for 2001 and 2002 were treated as adjusted in the FPAAs issued to those entities.

23. The deposit, though made prior to the issuance of the CWC 2002 FPAA, also represents the amount by which Richard Sands' tax would increase if the CWC 2002 FPAA were correct. Richard Sands has deposited the amount that would be due if either the CWC 2002 FPAA or the CWC 2001 FPAA were correct because even if the Service was correct that additional tax was owed, it could only be owed in either 2001 or 2002.

24. The deposit was made on May 17, 2006 and was sent to IRS Revenue Agent Peter Brokus. A copy of the check associated with this deposit is attached as Exhibit B.

25. CWC has satisfied all conditions precedent to filing this suit.

## III. DESCRIPTION OF THE TRANSACTIONS

26. On August 21, 2001, the Abigail Trust and the Zachary Trust each opened brokerage accounts at UBS PaineWebber, Inc. ("PaineWebber"), and each deposited several hundred thousand dollars in cash.

27. On August 23, 2001, the Abigail Trust, and the Zachary Trust each borrowed U.S. Treasury securities from PaineWebber and sold the securities on the open market (the "Short Sales"). The net proceeds of the Short Sales were transferred to their respective brokerage accounts at PaineWebber.

28. On August 27, 2001, the Abigail Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the Short Sale.

29. On August 27, 2001, the Zachary Trust assigned all of the assets in its PaineWebber brokerage account to CWC, and delegated to CWC its responsibility to cover the Short Sale.

30. On August 28, 2001, CWC contributed the following to Group in exchange for a 24.975% limited partnership interest: (a) the assets in the PaineWebber brokerage accounts that it received from the Zachary Trust and the Abigail Trust; (b) 500,000 shares of Class A common stock of Constellation Brands, Inc. ("Constellation") with a market value of approximately $21,175,000; and (c) $125,000. CWC also delegated to Group its responsibility to cover the Short Sales that had been executed by the Abigail Trust and the Zachary Trust.

31. On September 21, 2001, the CWC CRUT was formed. Its employer identification number is 13-7304577. CWC gifted its limited partnership interest in Group to the CWC CRUT that same day.

32. An appraisal dated September 21, 2001 determined that the value of a 24.975% limited partnership interest in Group was $5,198,897. CWC determined and reported a charitable deduction of $519,892 on its Form 1065 for 2001 based on the present value of the value of the charitable remainder interest in the CWC CRUT.

33. On February 22, 2002, the CWC CRUT made an irrevocable designation naming The Educational and Health Support Fund ("the Fund") as its charitable remainder beneficiary.

34. The Fund is a Code Section 501(c)(3) tax-exempt supporting organization. Its employer identification number is 52-725313.

35. The trustees of the Fund were James Locke, Freddy Robinson, and Wesley Stallings. James Locke is an attorney. Freddy Robinson and Wesley Stallings are both certified public accountants. The trustees of the Fund were independent from Group and its partners.

36. At all times, CWC was the income beneficiary of the CWC CRUT.

37. On February 27, 2002, CWC entered into a purchase agreement with the Fund to purchase the Fund's remainder interest in the CWC CRUT. CWC paid $550,074.56, the present value of the Fund's remainder interest on that date, to the Fund for the remainder interest.

38. Upon CWC's purchase of the Fund's remainder interest, the CRUT terminated because the present and future interests were held by the same entity.

39. On February 27, 2002, Group distributed $18,703,680 to CWC. Due to its carryover basis in Group from the CWC CRUT, CWC had a long-term capital loss of $3,223 from the distribution. CWC reported a net long-term capital gain of $39,790 on its return based on gains from other investments.

## III. <u>THE SERVICE'S POSITION</u>

40. On August 6, 2007, the Service issued the CWC 2002 FPAA, adjusting how CWC reported certain items on its Form 1065 for the taxable period ending December 31, 2002. The adjustment made by the Service in the CWC 2002 FPAA purports to reduce the capital contributed by $18,889,956 and increases long-term capital gain by $18,641,490. The CWC FPAA also asserts a 40% accuracy-related penalty or, alternatively a 20% accuracy-related penalty.

41. On December 22, 2005, the Service issued FPAAs to Group and to Partners, making various adjustments to their 2001 returns, some of which include adjustments that are related to the adjustment made in the CWC 2002 FPAA. The Group FPAA and the Partners FPAA also assert a 40% accuracy-related penalty or, alternatively a 20% accuracy-related penalty.

42. On December 28, 2005, the Service issued an FPAA to CWC making various adjustments to its 2001 return, some of which are the same as the adjustments that are made in the CWC 2002 FPAA.

43. On April 13, 2006, the Service issued an FPAA to Group for 2002 (the "Group 2002 FPAA"), making certain adjustments to its return based solely on adjustments made to Group's 2001 return. The Group 2002 FPAA was not challenged, and Plaintiff does not believe that the Group 2002 FPAA makes any partnership-level adjustments that would result in an increase of taxable income. Certain of the adjustments made in the Group 2002 FPAA were not adjustments to partnership items. The CWC 2002 FPAA bases most of the changes to CWC's return on changes made to Group's 2002 return in the Group 2002 FPAA.

44. This complaint challenges certain of the adjustments made by the Service in the CWC 2002 FPAA, including adjustments to CWC's 2002 return based on the Group 2002 FPAA. Separate complaints have been filed in this Court contesting the adjustments made by the Service in the CWC 2001 FPAA, the Group 2001 FPAA and the Partners 2001 FPAA.

## IV. THE SERVICE'S ERRORS IN THE CWC FPAA

45. The Service erred with respect to each and every determination and alternative position in the CWC FPAA, with the sole exception being Item C, which is labeled "Short-Term Capital Loss of RRMC."

46. Plaintiff believes that Item C was intended to read "Short-Term Capital Gain of RRMC" and believes that the Service intended to state that CWC's short-term capital loss for the tax year 2002 is increased by $1,350,445. If this is the case, Plaintiff concedes that the Group 2002 FPAA correctly determined that Group should not have reported the short term capital gain of $5,378,730. Therefore, the CWC 2002 FPAA correctly determined that CWC's net short-

term capital loss for the tax year 2002 should be increased by $1,350,445, and CWC has a net short-term capital loss of $1,580,979 for the 2002 tax year rather than a net short-term capital loss of $230,534.

**Errors Relating to Determinations of "Partnership Items" of R, R, M & C Group, L.P.**

47. The Service did not have authority to adjust items that were not partnership items in the Group 2002 FPAA.

48. The Service erred in determining that a partnership proceeding had been conducted in which determinations were made as to partnership items for Group for 2002 as all but one of the adjustments in the FPAA issued to Group for 2002 were not adjustments to partnership items and such adjustments are therefore invalid. The Service erred in attempting to adjust Group's 2002 return based solely on adjustments from 2001 which had already been challenged. The Service therefore erred in making adjustments to flow-through partnership items and affected items reported by CWC for 2002 based on the determinations in the FPAA issued to Group for 2002.

49. The Service erred in disregarding the 2001 assignments of the Initial Limited Partners through an adjustment to Group's 2002 return.

50. The identity of the partners of Group or the transfer of partnership interests in Group are not partnership items subject to adjustment in an FPAA because they do not affect the partnership's income or losses and have no effect on the tax treatment of any other partner. This particular adjustment was also made in the Group 2001 FPAA and has been challenged in *Alpha I, L.P. v. United States*, Case No. 06-407 T.[4]

[4] Whether the identity of the partners of Group or the transfer of partnership interests by the Initial Limited Partners is a partnership item is an issue currently pending before this Court in *Alpha I, L.P. v. United States*, Case No. 06-407 T, Doc. Nos. 21, 24, and 27.

51. The Service erred in determining that for the tax year 2002, the limited partnership interests in Group held by the CRUT Limited Partners are instead owned for federal income tax purposes by the Initial Limited Partners. The Service erred in disregarding the Initial Limited Partners' assignments of their partnership interests in Group under the economic substance doctrine. With respect to the reasons offered by the Service for this adjustment, the Service erred:

i. in determining that for federal income tax purposes, the Initial Limited Partners of Group, not their respective CRUTs, are the substantial owners of the limited partnership interests of Group throughout the tax year 2002.

52. The Service erred in determining that the aggregate amount of the beginning net capital contributions and net capital account balances of the partners of Group for the tax year 2002 is $0 instead of $75,694,095 as claimed on Group's 2002 return. With respect to the reasons offered by the Service for this adjustment, the Service erred:

i. in determining that under Code Section 752(a) and (b) the short sale obligations assumed by Group during 2001 are partnership liabilities;

ii. in determining that if the short sale obligations assumed by Group during 2001 are not Code Section 752(a) and (b) liabilities, then they are "liabilities" under Treas. Reg. § 1.752-6 the assumption of which decreases the contributing partners' outside bases in Group by the amount of the short sale proceeds;

iii. in determining that under Treas. Reg. § 1.701-2, the contributions made to Group by its partners during 2001 should be "disregarded for federal income tax purposes to produce tax consequences to the partners that are

consistent with the economic consequences of an investment in [Group] because it was formed and the contributions were made to reduce substantially the present value of the partners' aggregate tax liability in a manner inconsistent with the intent of Subchapter K" and in disregarding the partners' contributions to Group; and

iv. in determining that under the economic substance doctrine, the partners' contributions of brokerage accounts to Group during 2001 should be disregarded and therefore, the partners of Group should be treated for federal income tax purposes as if they directly held the short sale positions in those accounts.

53. Alternatively, the Service erred in adjusting the beginning net capital contributions and net capital account balances of the partners of Group for the tax year 2002 because the capital contributions and capital account balances are affected items the outcome of which is controlled by the determinations of this Court regarding the Group 2001 FPAA.

54. The Service erred in asserting any accuracy-related penalty provided by Code Section 6662.

55. The Service erred in determining that either the 40 percent accuracy-related penalty under Code Section 6662(h) or the 20 percent accuracy-related penalty under Code Section 6662(a) apply to any underpayment of tax attributable to the adjustments of partnership items of Group for 2002. With respect to the reasons offered by the Service for this adjustment, the Service erred:

i. in determining that the amount of any underpayment of tax is attributable to a gross valuation misstatement under Code Section 6662(h);

ii. in alternatively determining that the entire amount of any underpayment of tax is attributable to a substantial valuation misstatement under Code Section 6662(e);

iii. in alternatively determining that the entire amount of any underpayment of tax is attributable to negligence or disregard of rules or regulations under Code Section 6662(a), 6662(b)(1) and 6662(c); and

iv. in alternatively determining that the entire amount of any underpayment of tax is attributable to a substantial understatement of income tax under Code Section 6662(a), 6662(b)(2) and 6662(d).

56. The Service erred in determining that under Code Section 6221, the accuracy-related penalty determined in the Group partnership-level proceeding applies to underpayments attributable to partnership items of Group and related affected items for the tax year 2002.

**Errors Relating to Determinations of "Partnership Items" of CWC**

57. The Service erred in making adjustments to flow-through partnership items and affected items reported by CWC for 2002 based on the determinations in the FPAA issued to Group for 2002.

58. The Service erred in purporting to determine that the amount of capital contributed by CWC to Group should be reduced by $18,889,956 for the tax year 2002.

59. The Service erred in determining that under Code Section 731(a)(1), CWC should recognize long-term capital gain of $18,641,490 for the tax year 2002 upon the receipt of a cash distribution from Group in the amount of $18,703,680. The Service further erred in determining that as a result of this adjustment, CWC should have a net long-term capital gain for the tax year 2002 of $18,681,280 instead of a net long-term capital gain of $39,790.

60. The Service erred in attempting to increase CWC's long-term capital gain based on its adjustment to the beginning net capital contributions and net capital account balances of the partners of Group. The Service's adjustment to net capital contributions and net capital account balances of the partners of Group does not dictate the partners' bases in Group.

61. Alternatively, the Service erred in adjusting CWC's beginning net capital contributions and net capital account balance in Group for the tax year 2002 because the capital contributions and capital account balances are affected items the outcome of which is controlled by the determinations of this Court regarding the Group 2001 FPAA.

62. The Service further erred in determining that for federal income tax purposes, CWC is treated as the owner of its original 24.975% limited partnership interest in Group during the tax year 2002 and in determining that under Code Sections 703 and 704 the tax items of Group allocable to the limited partnership interest held by CWC CRUT should instead be allocated to CWC.

63. The Service erred in determining that if, notwithstanding its adjustments to Group's 2002 return, CWC CRUT is treated as the owner of the partnership interest in Group assigned by CWC, CWC's assignment of its partnership interest in Group to CWC CRUT is disregarded for federal income tax purposes and CWC is treated as the owner of the interest held by CWC CRUT under the economic substance doctrine, the step transaction theory, and assignment of income principles.

64. The Service erred in determining that either the 40 percent accuracy-related penalty under Code Section 6662(h) or the 20 percent accuracy-related penalty under Code Section 6662(a) apply to any underpayment of tax attributable to the adjustments of partnership

items of CWC for 2002. With respect to the reasons offered by the Service for this adjustment, the Service erred:

i. in determining that the amount of any underpayment of tax is attributable to a gross valuation misstatement under Code Section 6662(h);

ii. in alternatively determining that the entire amount of any underpayment of tax is attributable to a substantial valuation misstatement under Code Section 6662(e);

iii. in alternatively determining that the entire amount of any underpayment of tax is attributable to negligence or disregard of rules or regulations under Code Section 6662(a), 6662(b)(1) and 6662(c); and

iv. in alternatively determining that the entire amount of any underpayment of tax is attributable to a substantial understatement of income tax under Code Section 6662(a), 6662(b)(2) and 6662(d).

65. The Service erred in determining that under Code Section 6221, the accuracy-related penalty determined in the CWC partnership-level proceeding applies to underpayments attributable to partnership items of CWC and related affected items for the tax year 2002.

66. CWC filed its return for 2002 on August 13, 2003. The date three years from the date CWC's return was filed was August 12, 2006. CWC did not extend the statute of limitations for the Service to assess tax for its tax year ended December 31, 2002.

67. The CWC 2002 FPAA was issued more than three years from the date CWC filed its return and it is therefore invalid because the statute of limitations for making adjustments to its return has passed.

## V. CWC'S CORRECT TREATMENT OF TAX ITEMS

68. CWC and its partners properly determined all items of tax basis, income, losses, deductions, and credits of CWC for the taxable year 2002.

69. Group properly determined and reported the aggregate amount of beginning net capital contributions and net capital account balances of the partners of Group for the tax year 2002.

70. CWC and its partners properly determined the long-term capital loss on the distribution it received from Group in 2002.

71. CWC and its partners properly determined CWC's carryover basis in Group from CWC CRUT.

72. CWC and its partners properly determined and reported CWC's net long-term capital gain for 2002.

73. CWC properly reported the gift of its limited partnership interest in Group on its 2001 return. Group properly treated CWC CRUT as the owner of a 24.975% limited partnership interest as of January 1, 2002.

74. CWC and its partners properly determined and reported the amount of partnership liabilities of $0 in 2001.

75. CWC and its partners properly calculated the adjusted bases of the partners in their respective partnership interests under Code Sections 722 , 742, 731(1), and 752(b) in 2001.

76. CWC and its partners properly determined that the Short Sale "obligations" contributed to CWC in 2001 do not constitute liabilities for purposes of Code Section 752.

77. In the alternative, to the extent that the requirement to cover the Short Sales is a liability for purposes of Code Section 752, the amount of that liability is $0.

78. Treas. Reg. § 1.752-6 may not be used to support an adjustment in this case because:

i. it is invalid; or

ii. if valid, it cannot be retroactively applied; or

iii. it has no application to the facts in this case.

79. In the alternative, to the extent that Treas. Reg. § 1.752-6 is valid and applicable, the Service may not rely on it to adjust the partners' bases in CWC below the "adjusted value" of their partnership interests, which is the fair market value of the interest increased by the partner's share of partnership liabilities.

80. In the alternative, to the extent that Treas. Reg. § 1.752-6 is valid and applicable, and the requirement to cover the Short Sales is a "liability" within the meaning of that regulation, the amount of such liability is $0.

81. CWC was not formed or used in connection with a transaction or transactions in a manner inconsistent with the intent of Subchapter K of the Code and may not otherwise be disregarded, nor may any of its transactions or the transactions of any of its partners be ignored, disregarded or recharacterized, in whole or in part, under the authority of Treas. Reg. § 1.701-2.

82. Treas. Reg. § 1.701-2 is illegal and invalid and may not be legally used to support an adjustment in this case.

83. CWC and every part of the transactions at issue had economic substance.

84. In every other respect, the federal tax consequences of the transactions at issue in this case are as reported by CWC and its partners on their federal tax returns.

85. CWC and its partners are not subject to penalties under Code Section 6662 because if any tax liability were ultimately determined by this Court against them, such liability

is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1.

86. CWC and its partners are not subject to penalties under Code Section 6662 because if any understatement were ultimately determined by the Court, such understatement would be attributable to items for which the relevant facts were adequately disclosed in the returns or in a statement attached to the returns; and there is a reasonable basis for the tax treatment of such item by the taxpayer.

87. The transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

88. In the alternative, even if the transactions do constitute a tax shelter, CWC and its partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined by the Court is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, CWC and its partners reasonably believed that their tax treatment of such item was more likely than not the proper treatment.

89. CWC and its partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and they acted in good faith as contemplated by Code Section 6664(c)(1).

## VI. BURDEN OF PROOF

90. The Government has the burden of proof under Code Section 7491.

## VII. PRAYER

WHEREFORE, Plaintiff prays that this Court:

1. Determine that the adjustments made by the Service in the CWC 2002 FPAA are factually and/or legally incorrect and are invalid;

2. Determine that the penalties asserted by the Service in the CWC 2002 FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;

3. Determine that the deposit paid by Richard Sands should be refunded, together with interest thereon; and

4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Dated: November 1, 2007

Respectfully submitted,

Lewis S. Wiener
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, D.C. 20004-2415
Tel: (202) 383-0100
Fax: (202) 637-3593
lewis.wiener@sablaw.com
Attorney for Plaintiff

OF COUNSEL:
N. Jerold Cohen
Thomas A. Cullinan
Joseph M. DePew
Julie P. Bowling
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 853-8000
Fax: (404) 853-8806

Kent L. Jones
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW

Washington, D.C. 20004-2415
Tel: (202) 383-0732
Fax: (202) 637-3593

Attorneys for Plaintiff

**Internal Revenue Service**
**1222 Spruce St., Stop 4020STL, St. Louis , MO 63103**

**Department of the Treasury**

Refer To:
Deborah Collins
Taxpayer Identifying Number:

Name of Partnership:
CWC Partnership I
Partnership Identifying Number:
16-1472626
Tax Year Ended:
December 31, 2002
Date FPAA Mailed to Tax Matters Partner:
August 6, 2007
Person to Contact:
Deborah Collins
43-15019
Contact Hours:
7:30am-4:00pm
Contact Telephone Number:
314-612-4383

Date: 8/6/2007

Richard E. Sands, Tax Matters Partner
CWC Partnership I
% Constellation Brands Inc.
300 Willowbrook Office Park
Fairport, NY 14450

EXHIBIT
A

PENGAD-Bayonne, N. J.

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Tim Conley

Tim Conley,
Technical Service Territory Manager

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

| Form **870-PT** (Rev. 6-2006) | Department of the Treasury — Internal Revenue Service **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: |
|---|---|---|

| Taxpayer(s) name(s), address and ZIP code: | Name of Partnership: | Tax Year(s) Ended: |
|---|---|---|
| Richard E. Sands, Tax Matters Partner<br>CWC Partnership I<br>c/o Constellation Brands Inc.<br>300 Willowbrook Office Park<br>Fairport, NY 14450 | CWC Partnership I<br>Taxpayer Identifying Number:<br>16-1472626 | 200212 |
| | Name of Tax Matters Partner:<br>Richard E. Sands | |
| Taxpayer Identifying Number: | | |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts
## &
## Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted..

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items *and partnership level determinations as to penalties, additions to tax, and additional amounts,* as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

6. For a partner who is a member of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). However, if the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(6)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block.

   For a partner who is the common parent corporation of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before, on or after June 28, 2002, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

7. If the Tax Matters Partner signs this offer, please include the title with the signature.

8. If the Tax Matters Partner is a subsidiary corporation in a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77A(a). An authorized officer for the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. However, if the agreement is for partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v).

NOTE: The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

Department of the Treasury - Internal Revenue Service

# AGREEMENT FOR PARTNERSHIP ITEMS AND PARTNERSHIP LEVEL DETERMINATION AS TO PENALTIES, ADDITIONS TO TAX, AND ADDITIONAL AMOUNTS

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP: CWC Partnership I<br>TAXPAYER IDENTIFYING NUMBER: 16-1472626 | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| | 12/31/2002 | | |
| **DETAIL OF ADJUSTMENTS TO ORDINARY INCOME:** | | | |
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| **Total Adjustments to Ordinary Income** | | | |
| **Other Adjustments** | | | |
| a. Net income (loss) from rental real estate activities | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | (3,251.00) | | |
| (3) Corrected | (3,251.00) | | |
| b. Net income (loss) from other rental activities | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | (1,134.00) | | |
| (3) Corrected | (1,134.00) | | |

**Remarks:**

It is determined that the accuracy-related penalties provided by IRC 6662(a) and 6662(h) apply to the entire amount of any underpayment of tax attributable to adjustments of the partnership items of R, R, M & C Group, L.P. and CWC Partnership I for the taxable year ending December 31, 2002. The accompanying Explanation of Adjustments to Partnership Items and Partnership-level Determinations is hereby incorporated by reference.

## Form 870-PT, Other Adjustments (Continued)

Page of

Name of Partnership: CWC Partnership I

| Taxpayer Identifying Number: 16-1472626 | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2002 | | |
| c. Portfolio income (loss) interest | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 302,062.00 | | |
| (3) Corrected | 302,062.00 | | |
| d. Portfolio income (loss) dividends | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 81,165.00 | | |
| (3) Corrected | 81,165.00 | | |
| e. Portfolio income (loss) royalties | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 5.00 | | |
| (3) Corrected | 5.00 | | |
| f. Portfolio income (loss) net short-term gain (loss) | | | |
| (1) Adjustment | (1,350,445.00) | | |
| (2) As reported | (230,534.00) | | |
| (3) Corrected | (1,580,979.00) | | |
| g. Portfolio income (loss) - qualified 5-year gain | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 39.00 | | |
| (3) Corrected | 39.00 | | |
| h. Portfolio income net long-term gain (loss) total | | | |
| (1) Adjustment | 18,641,490.00 | | |
| (2) As reported | 39,790.00 | | |
| (3) Corrected | 18,681,280.00 | | |
| i. Other portfolio income (loss) | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 13,883.00 | | |
| (3) Corrected | 13,883.00 | | |
| j. Net gain (loss) under section 1231 not casualty/theft | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 11,543.00 | | |
| (3) Corrected | 11,543.00 | | |
| k. Other income (loss) | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | (54,404.00) | | |
| (3) Corrected | (54,404.00) | | |
| l. Charitable contributions 30 percent | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 338.00 | | |
| (3) Corrected | 338.00 | | |

## Form 870-PT, Other Adjustments (Continued)

Page of

Name of Partnership: CWC Partnership I

| Taxpayer Identifying Number: 16-1472626 | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2002 | | |
| m. Charitable contributions 50 percent | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 30.00 | | |
| (3) Corrected | 30.00 | | |
| n. Deductions related to portfolio income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 268,288.00 | | |
| (3) Corrected | 268,288.00 | | |
| o. Other deductions | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 3,472.00 | | |
| (3) Corrected | 3,472.00 | | |
| p. Interest expense on investment debts | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 148,112.00 | | |
| (3) Corrected | 148,112.00 | | |
| q. Investment income included in portfolio income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 397,115.00 | | |
| (3) Corrected | 397,115.00 | | |
| r. Other credits (not related to rental activities) | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 216.00 | | |
| (3) Corrected | 216.00 | | |
| s. Gross nonfarm income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 933,488.00 | | |
| (3) Corrected | 933,488.00 | | |
| t. Adj./tax pref. items depreciation in serv. after 1986 | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 16,503.00 | | |
| (3) Corrected | 16,503.00 | | |
| u. Adj./tax pref. items adjusted gain or loss | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | (393.00) | | |
| (3) Corrected | (393.00) | | |
| v. Foreign taxes - gross income from all sources | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 253,281.00 | | |
| (3) Corrected | 253,281.00 | | |

## Form 870-PT, Other Adjustments (Continued)

Page of

Name of Partnership: CWC Partnership I

| Taxpayer Identifying Number: 16-1472626 | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2002 | | |
| w. Gross income sourced at partner level | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | (83,146.00) | | |
| (3) Corrected | (83,146.00) | | |
| x. Foreign gross income sourced at partnership - passive | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 104,216.00 | | |
| (3) Corrected | 104,216.00 | | |
| y. Foreign gross income sourced at partnership - listed | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 6.00 | | |
| (3) Corrected | 6.00 | | |
| z. Foreign gross income sourced at partnership - limitation | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 194.00 | | |
| (3) Corrected | 194.00 | | |
| aa. Deductions allocated/apportioned at partner level - interest | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 160,224.00 | | |
| (3) Corrected | 160,224.00 | | |
| ab. Deductions allocated/apportioned at partner level - other | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 100,623.00 | | |
| (3) Corrected | 100,623.00 | | |
| ac. Deductions allocated/apportioned at P/S level - passive | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 29,980.00 | | |
| (3) Corrected | 29,980.00 | | |
| ad. Foreign taxes total foreign taxes paid / accrued | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 8,642.00 | | |
| (3) Corrected | 8,642.00 | | |
| ae. Tax-exempt interest income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 373.00 | | |
| (3) Corrected | 373.00 | | |
| af. Other tax-exempt income | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 338.00 | | |
| (3) Corrected | 338.00 | | |

## Form 870-PT, Other Adjustments (Continued)

Page of

Name of Partnership: CWC Partnership I

| Taxpayer Identifying Number: 16-1472626 | Tax Year(s) Ended | | |
|---|---|---|---|
| | 12/31/2002 | | |
| ag. Nondeductible expenses | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 682.00 | | |
| (3) Corrected | 682.00 | | |
| ah. Distributions - money (cash/securities) | | | |
| (1) Adjustment | 0.00 | | |
| (2) As reported | 1,551,720.00 | | |
| (3) Corrected | 1,551,720.00 | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |
| | | | |
| (1) Adjustment | | | |
| (2) As reported | | | |
| (3) Corrected | | | |

**Notice 2000-44 Case**

**ATTACHMENT TO FORM 870-PT**

**EXPLANATION OF ADJUSTMENTS TO PARTNERSHIP ITEMS AND PARTNERSHIP LEVEL DETERMINATIONS**

| PARTNERSHIP | | TAXPAYER ID | TAX YEAR |
|---|---|---|---|
| CWC PARTNERSHIP I | | 16-1472626 | 12/31/2002 |
| ITEM | ADJUSTMENT | REPORTED | CORRECTED |

**I DETERMINATION OF PARTNERSHIP ITEMS OF R,R, M&C GROUP, L.P.**

For the tax year 2002, CWC Partnership I (CWC) was a pass-thru partner of R, R, M &C Group, L.P. (RRMC). A partnership proceeding has been conducted in which the following determinations were made as to partnership items of RRMC for 2002. Consistent with those partnership-level determinations, the flow-through partnership items and affected items reported by CWC for the tax year 2002 have been adjusted as indicated below.

| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
|---|---|---|---|
| A CAPITAL CONTRIBUTIONS TO RRMC | ($18,889,956) | $18,889,956 | $-0- |

It has been determined that the aggregate amount of the beginning net capital contributions and net capital account balances of the partners of RRMC for the tax year 2002 is $0- instead of $75,694,095 as claimed on RRMC's partnership return for the tax year 2002. As a result, the amount of CWC's beginning capital contributions to RRMC for the tax year 2002 is $-0- instead of $18,889,956.

1 **REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING**

a. Under I.R.C. § 752(a) and (b), the short sale obligations purportedly assumed by RRMC during 2001 are partnership liabilities

b. Under Treas. Reg. § 1.752-6, if the short sale obligations purportedly assumed by RRMC during 2001 are not I.R.C. § 752(a) and (b) liabilities, then they are non-I.R.C. § 752 liabilities under Treas. Reg. § 1.752-6, the assumption of which decreases the contributing partners' outside bases in RRMC by the amount of the short sale proceeds.

c. Under Treas. Reg. § 1.701-2, the purported contributions by the partners to RRMC during 2001 are disregarded for federal income tax purposes to produce tax consequences to the partners that are consistent with the economic consequences of an investment in RRMC because it was formed and the contributions were made to reduce substantially the present value of the partners' aggregate tax liability in a manner inconsistent with the intent of Subchapter K.

d. Under the economic substance doctrine, the partners' purported contributions of brokerage accounts to RRMC during 2001 are disregarded, and therefore the purported partners of RRMC are treated for federal income tax purposes as if they directly held the short sale positions in those accounts.

| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
|---|---|---|---|
| 2 LONG-TERM CAPITAL GAIN OF CWC | $18,641,490 | $39,790 | $18,681,280 |

a. Under I.R.C. § 731(a)(1), CWC recognizes long-term capital gain of $18,641,490 for the tax year 2002 upon the receipt of a cash distribution from RRMC in the amount of $18,703,680 As a result, CWC has a net long-term capital gain for the tax year 2002 of $18,681,280 instead of a net long-term capital gain of $39,790 as reported on CWC's partnership return.

**B IDENTITY OF PARTNERS OF RRMC**

It has been determined that for the tax year 2002 the limited partnership interests in RRMC purportedly held by so-called "charitable remainder unitrusts" are owned for federal income tax purposes by the original limited partners, whose purported assignments of their interests are disregarded under the economic substance doctrine.

1 **REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING**

a. For federal income tax purposes, the original limited partners of RRMC, not their respective charitable remainder unitrusts, are the substantial owners of the limited partnership interests of RRMC throughout the tax year 2002.

2 **AFFECTED TAX ITEMS OF CWC**

a. For federal income tax purposes, CWC is treated as the owner of its original 24.975% limited partnership interest in RRMC during the tax year 2002.

b. Under I.R.C. §§ 703 and 704, the tax items of RRMC allocable to the limited partnership interest purportedly held by CWC's charitable remainder unitrust are allocated instead to CWC.

**C SHORT-TERM CAPITAL LOSS OF RRMC-**

It has been determined that RRMC has a net short-term capital gain of $-0- for the tax year 2002 instead of a net short-term capital gain of $5,348,730 as reported on RRMC's partnership return because RRMC improperly reported capital gain attributable to a distribution under I.R.C. § 731(a)(1), which should have been reported as long-term capital gain by the partners to the extent the cash distributed exceeded their respective outside bases.

| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
|---|---|---|---|
| 1 SHORT-TERM CAPITAL LOSS OF CWC | $1,350,445 | $230,534 | $1,580,979 |

a. Under I.R.C. §§ 703 and 704, the amount of short-term capital gain of RRMC allocated to CWC for 2002 is $-0- instead of $1,350,445 as reported on RRMC's partnership return for 2002. Accordingly, CWC's short-term capital gain for the tax year 2002 is increased by $1,350,445. Consequently, CWC has a net short-term capital loss of $1,580,979 for the tax year 2002 instead of a net short-term capital loss of $230,534 as reported on

**Notice 2000-44 Case**

**ATTACHMENT TO FORM 870-PT**

**EXPLANATION OF ADJUSTMENTS TO PARTNERSHIP ITEMS AND PARTNERSHIP LEVEL DETERMINATIONS**

| PARTNERSHIP | | TAXPAYER ID | TAX YEAR |
|---|---|---|---|
| CWC PARTNERSHIP I | | 16-1472626 | 12/31/2002 |
| ITEM | ADJUSTMENT | REPORTED | CORRECTED |
| D ACCURACY-RELATED PENALTIES IMPOSED IN RRMC PARTNERSHIP PROCEEDING | | | |
| It has been determined that the 40% accuracy-related penalty provided by I.R.C. § 6662 (h) or, alternatively, the 20% accuracy-related penalty provided by I.R.C. § 6662(a) applies to the entire amount of any underpayment of tax attributable to the adjustments of partnership items of RRMC for the tax year 2002. | | | |
| 1 REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING | | | |
| a The amount of any underpayment of tax is attributable to a gross valuation misstatement under I.R.C. § 6662(h). | | | |
| b Alternatively, the entire amount of any underpayment of tax is attributable to a substantial valuation misstatement under I.R.C. § 6662(e). | | | |
| c Alternatively, the entire amount of any underpayment of tax is attributable to negligence or disregard of rules or regulations under I.R.C. §§ 6662(a), 6662(b)(1), and 6662(c). | | | |
| d Alternatively, the entire amount of any underpayment of tax is attributable to a substantial understatement of income tax under I.R.C. §§ 6662(a), 6662(b)(2), and 6662(d). | | | |
| 2 UNDERPAYMENTS ATTRIBUTABLE TO PARTNERSHIP ITEMS OF RRMC | | | |
| Under I.R.C. § 6221, the accuracy-related penalty determined in the RRMC partnership-level proceeding applies to underpayments attributable to the partnership items of RRMC and related affected items for the tax year 2002, subject to defenses that may be asserted by a partner in an action for refund after assessment and payment. | | | |
| II DETERMINATION OF PARTNERSHIP ITEMS OF CWC PARTNERSHIP I | | | |
| A LONG-TERM CAPITAL GAINS AND LOSSES | $18,641,490 | $39,790 | $18,681,280 |
| If, notwithstanding the adjustments to the partnership items of RRMC for the tax year 2002, CWC's charitable remainder unitrust is treated as the owner of the partnership interest in RRMC purportedly assigned by CWC, then, in the alternative, CWC's purported assignment of its partnership interest in RRMC to its charitable remainder unitrust is disregarded for tax purposes and CWC is treated as the owner of the interest purportedly held by the charitable remainder unitrust under the economic substance doctrine, the step transaction theory, and assignment of income principles. | | | |
| B ACCURACY-RELATED PENALTIES | | | |
| It has been determined that the 40% accuracy-related penalty provided by I.R.C. § 6662 (h) or, alternatively, the 20% accuracy-related penalty provided by I.R.C. § 6662(a) applies to the entire amount of any underpayment of tax attributable to the adjustment to the partnership items of CWC for the tax year 2002. | | | |
| 1 REASONS FOR THIS DETERMINATION INCLUDE THE FOLLOWING | | | |
| a The amount of any underpayment of tax is attributable to a gross valuation misstatement under I.R.C. § 6662(h). | | | |
| b Alternatively, the entire amount of any underpayment of tax is attributable to a substantial valuation misstatement under I.R.C. § 6662(e). | | | |
| c Alternatively, the entire amount of any underpayment of tax is attributable to negligence or disregard of rules or regulations under I.R.C. §§ 6662(a), 6662(b)(1), and 6662(c). | | | |
| d Alternatively, the entire amount of any underpayment of tax is attributable to a substantial understatement of income tax under I.R.C. §§ 6662(a), 6662(b)(2), and 6662(d). | | | |
| 2 UNDERPAYMENTS ATTRIBUTABLE TO PARTNERSHIP ITEMS OF CWC | | | |
| Under I.R.C. § 6221, the accuracy-related penalty applies to underpayments attributable to the partnership items of CWC and related affected items for the tax year 2002, subject to defenses that may be asserted by a partner in an action for refund after assessment and payment. | | | |

8059

**RICHARD ELLIOT SANDS**
C/O CONSTELLATION BRANDS
300 WILLOWBROOK OFFICE PARK
FAIRPORT, NY 14450-4222

**CMA** Cash Management Account

DATE 5-16-06

25-80/440

PAY TO THE ORDER OF US Treasury $ 3,369,096.00

Three million three hundred sixty nine thousand ninety six and 00/100 ------------------------- DOLLARS

Security Features Details on Back.

Merrill Lynch 6226(e) payment

Bank One, NA Columbus, Ohio 43271 SSN [redacted]

Form 1040 - 2002
FPAMs - Alpha, Beta, Group
CWC, Partners

MEMO

MP

[redacted] [redacted] 8059

© HARLAND 2001

EXHIBIT
B

PENGAD-Bayonne, N.J.